UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                                                    CASE NO: 2:13-cr-129-FtM-38CM

WILLIAM CARDONA-CASTILLO

_____

**ORDER**[1]

This matter comes before the Court on Defendant's Motion to Suppress (Doc. #73) filed on September 18, 2014. The Government filed a Response in Opposition on September 22, 2014. (Doc. #75). Thereafter, on November 17, 2014, the Court held a hearing where the Defendant was present with counsel, heard testimony, and entertained oral argument from the Parties. The Motion is now ripe for review.

**Facts**

On the morning of July 24, 2013, the Lee County Sherriff's Office ("LCSO") responded to a call that alleged a burglary was in progress at 1705 Park Meadows Drive, Fort Myers, Florida 33908. (Doc. #73 at 1). Upon arriving at the scene, LSCO Deputy Herndon made contact with the victim, who stated that she heard her car alarm sound and witnessed a male running away from the area where her vehicle was located. (Doc. #73 at 1). The victim provided Deputy Herndon with a description of a "white male,

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

wearing a black shirt, blue jeans, and a hat." (Doc. #73 at 1).  By this point, several other LCSO deputies arrived to assist in establishing a perimeter. (Doc. #73 at 2).

While helping establish the perimeter, LCSO Deputy Duncan situated himself in the area near Summerlin road and Brantley road. (Doc. #73 at 2).  At this location, Deputy Duncan observed a male wearing a black shirt and blue jeans walking in the area. (Doc. #73 at 2).  Because the male's appearance matched the description that the victim provided, Deputy Duncan detained the individual, who later turned out to be Defendant William Cardona-Castillo. (Doc. #73 at 2).  After detaining Defendant, another LCSO deputy arrived at Deputy Duncan's location with the victim to conduct a "show-up." (Doc. #73 at 2).  During the show-up, the victim indicated that Defendant was the male she observed in the area near her vehicle when the alarm sounded. (Doc. #73 at 2).  Consequently, Defendant was arrested and transported to the LCSO. (Doc. #73 at 2).

## Discussion

### A. *Deputy Duncan Lawfully Detained Defendant*

Defendant begins his Motion by arguing that because Deputy Duncan "lacked reasonable suspicion in detaining him as a suspect based on the overly broad and vague description provided by [the victim]," any and all evidence related to Deputy Duncan's allegedly "illegal stop" must be suppressed. (Doc. #73 at 4).  As Defendant notes, when the LCSO deputies made contact with the victim, she described the individual she saw running from the scene as a "white male, wearing a black shirt, blue jeans, and a hat." (Doc. #73 at 5).  But Defendant points the Court's attention to the fact that he did not match three of these four descriptive characteristics on the night in question: he is a Hispanic male, who was not wearing long blue jeans or a hat. (Doc. #73 at 5).  Therefore,

2

Defendant avers that Deputy Duncan failed to have "a founded suspicion sufficient to justify" Defendant's detainment, and instead detained him "merely . . . on a hunch or a guess." (Doc. #73 at 6). In response, the Government contends that the facts surrounding Defendant's detainment illustrate that it was reasonable under the circumstances. The Court agrees.

It is within constitutional bounds for a law enforcement officer to "detain a person briefly for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." United States v. Powell, 222 F.3d 913, 917 (11th Cir. 2000) (citing Terry v. Ohio, 392 U.S. 1, 20 (1968)). Indeed, "[t]he reasonable suspicion must be more than an inchoate and unparticularized suspicion or hunch." Id. (internal citations and quotations omitted). Rather, the detaining officer "must have 'some minimal level of objective justification' taken from the totality of the circumstances." Id. (quoting United States v. Sokolow, 490 U.S. 1, 7-8 (1989)). And ultimately, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." Illinois v. Wardlow, 528 U.S. 119, 125 (2000) (citing United States v. Cortez, 449 U.S. 411, 418 (1981)).

Here, the Court finds that Deputy Duncan had a sufficient, reasonable basis for briefly detaining Defendant. As noted above, the victim described the individual she witnessed breaking into her vehicle as a white male, wearing blue jeans, a black shirt, and a baseball cap. Defendant concedes that his outfit on the night in question "match[ed] the general clothing description," but attempts to distance himself from this fact by noting that he was not wearing long blue jeans or a baseball cap. (Doc. #73 at 4). But the Court

finds this argument unpersuasive. The fact remains that Deputy Duncan detained Defendant approximately one half mile from the crime scene when he witnessed Defendant walking along a tree line at three o'clock in the morning with a black shirt draped over his shoulder, wearing long shorts made of a jean material. And Defendant's attempt at further contrasting his appearance from the victim's description by making a race argument fairs no better because as the Government notes, "people who identify their origin as Hispanic, Latino, or Spanish may be any race." (Doc. #75 at 5). The Defendant is a light skinned Hispanic male.

Based on the totality of the circumstances, it is clear that Deputy Duncan had more than a "hunch or a guess" when he detained Defendant to investigate his possible involvement with the car burglary. Deputy Duncan observed Defendant wearing clothing that matched the victim's description in close proximity, both temporally and logistically, to the crime scene. This observation alone gave Deputy Duncan, at the least, the minimal level of objective justification necessary to reasonably detain Defendant. Accordingly, Defendant's Motion to Suppress on the basis that he was unlawfully detained must be denied.

B. <u>Defendant's Show-Up was Not Unduly Suggestive and Prejudicial.</u>

Next, Defendant argues that the "show-up," the method used for the victim to identify him, was "unduly suggestive and prejudicial," and that the Court must therefore suppress this identification. (Doc. #73 at 6). The Government failed to provide a response to this argument. (Doc. #75). Nevertheless, the Court finds Defendant's argument unpersuasive.

4

In *Neil v. Biggers*, the Supreme Court set out a "two-step analysis in assessing the constitutionality of a trial court's decision to admit out-of-court identifications." *Cikora v. Dugger,* 840 F.2d 893, 895 (11th Cir. 1988) (citing 409 U.S. 188 (1972)). Under the first step, courts "must determine whether the original identification procedure was unduly suggestive." *Id.* (citations omitted). If it was, the court moves onto the second step, which evaluates "whether, under the totality of the circumstances, the identification was nonetheless reliable." *Id.* (citations omitted). The Supreme Court identified five factors for courts to consider when evaluating the second step: "opportunity to view, degree of attention, accuracy of the description, level of certainty, and length of time between the crime and the identification." *Id.* (citing *Biggers*, 409 U.S. at 199).

Here, the Court finds Defendant's argument that simply conducting a show-up, without more, results in an unduly suggestive and prejudicial identification to be contrary to well-established precedent. While it is true that show-ups are considered inherently suggestive, they are not inherently *unduly* suggestive. *United States v. Estrella,* No. 2:11-CR-40-FTM-29SPC, 2011 WL 5358675, at *1 (M.D. Fla. Nov. 5, 2011) *aff'd*, 518 F. App'x 822 (11th Cir. 2013) (citations omitted). And this distinction is key because without being inherently *unduly* suggestive, the "admission of evidence of a show-up without more does not violate due process." *Id.* (citations omitted). Therefore, without asserting that the LSCO deputies "aggravate[d] the suggestiveness of the confrontation" beyond simply conducting a single suspect show-up, Defendant's argument fails.

But regardless of the above analysis, the Court finds that the victim's identification at the show-up was nonetheless reliable under the five-factor *Biggers* test. First, as to the opportunity of the victim to view the criminal at the time of the crime, the victim reacted to

her car alarm going off quickly enough to view a man fleeing the scene.  Second, as to the victim's degree of attention and the accuracy of the victim's prior description of the criminal, the victim was able to pay enough attention to seemingly identify the exact outfit that Defendant was wearing – a dark shirt and blue jeans.  Third, as to the level of certainty demonstrated by the victim at the confrontation, Defendant's own Motion asserts that the victim was "one hundred percent (100%) sure Defendant was who she observed." ([Doc. #73 at 7, ¶ 33](#)).  Finally, as to the length of time between the crime and the confrontation, the Government asserts that the entire detention lasted no more than 30 minutes, which indicates that the victim identified Defendant in the show-up a short time after the crime was committed.  ([Doc. #75 at 9](#)).  Therefore, under the totality of the circumstances, the Court finds that the show-up was not unduly suggestive and prejudicial.

Based on the foregoing analysis and the reasons stated on the record, Defendant's Motion to Suppress his identification as a result of the show-up is denied.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Suppress (Doc. 73) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this November 18, 2014.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  Counsel of Record